UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

Criminal No. 21-cr-20206

v.                                                    Hon. Denise Page Hood

Colin Martin,

Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

Colin Martin's victims pleaded with him: "Help me." "Please, I thought you were my friend." "Please, I will do anything, please, I'm begging you." But Martin ignored their pleas. Children cried and begged while taking off their clothes. They sobbed while committing sex acts. Through threats and intimidation, Martin repeatedly forced them to engage in sex acts, sometimes with siblings or dogs, despite their tears, protests, and statements that they would kill themselves.

None of those pleas deterred Martin because he is a sadist. Their fear, their pain, their pleas for mercy only excited him further. Using the anonymity of the internet, Martin terrorized and degraded numerous children for his pleasure and enjoyment. Martin's force and

1

threats to these children was just as real as if he was in the same room as them, and he should not be treated any differently than if he was.

Martin's conduct and the gravity of the crimes he committed warrant a sentence of life in prison. The Probation Department has determined that Martin's sentencing guideline range is life, and there is nothing about his offense which suggests a variance from the applicable guideline range is appropriate. A guideline sentence in this case would be "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## I.    Facts and Procedural History

### A.    Martin's Production of Child Pornography

Several independent law enforcement investigations lead to the discovery that Martin used the social media service Musical.ly and Skype to coerce young girls to produce child pornography. On these platforms, Martin pretended to be a female talent agent and model. Over the course of three years, Martin prolifically abused at least eight children.

Ultimately, HSI agents searched Martin's residence in July 2020 and conducted a forensic examination of Martin's laptop. On his laptop, HSI agents found thousands of sexually explicit videos made by Martin, including numerous videos of minor victims identified in the Indictment. In some of these videos, Martin's victims are clearly prepubescent. Martin's computer also had evidence of the Skype accounts and chats that Martin used to perpetrate his scheme.

Martin's criminal conduct establishing the counts of the Indictment is set forth below.

**Minor Victims One and Two**

In late April 2017, a 9-year-old from Canada (MV-1) learned from friends that a talent scout on the popular cell phone application Musical.ly could help young girls become famous. PSR ¶ 11. The scout was known as "Jazzy Martinez" with the username @jazzymarr. Jazzy's profile picture depicted a white female with brown hair who appeared to be 14-16 years old, and the page read: "I'm a talent agent and model. I make girls like you famous! Message me if you want to get crowned ☺." PSR ¶ 11. In reality, "jazzymarr" was Martin, a nearly 30-year-old man living in Michigan. *Id.*

Jazzy and MV-1 first communicated over Musical.ly. PSR ¶ 12.
Then Martin created a Skype account for MV-1, including an email
address. On Skype, Martin instructed MV-1 about the kinds of videos
MV-1 should create. Martin also inquired about MV-1's 12-year-old big
sister, MV-2. *Id.* Martin persuaded MV-1 to take her phone in the
bathroom while MV-2 was taking a shower and face the camera towards
her. *Id.* Martin also asked MV-1 to show her buttocks and full body view
on camera. MV-1 complied with all of Martin's requests, and he
demanded re-takes if the video or the view was not clear.  *Id.*

On May 1, 2017, MV-2 found an inappropriate message from
Martin on MV-1's iPod and told their parent who called the police. MV-1
was interviewed by law enforcement, and stated she recorded MV-2 in
the shower at Martin's direction; that on three occasions, she took
videos of herself naked at Martin's direction; and that Martin knew she
was only 9 years old.

When law enforcement later found and searched Martin's
computer, police recovered three videos depicting MV-1 and MV-2. The
first was almost 30 minutes long and depicted MV-1's genitals. The
second video was over 6 minutes long and featured close-up views of

4

MV-1's buttocks and genitals. The third video showed MV-2 in the shower.

**Minor Victim 3**

On September 21, 2017, the parent of a 12-year-old girl (MV-3) contacted police in Ohio to report that MV-3 was told by an unknown person, later determined to be Martin, to engage in sexual activity on camera. PSR ¶ 15. A detective met with MV-3 and reviewed the contents of MV-3's cell phone. MV-3 was also forensically interviewed. The investigation determined that Martin had befriended MV-3 on the Musical.ly application; Martin again used the screenname "@jazzymarr" and used the persona of a female bisexual modeling agent. PSR ¶¶ 15-16.  MV-3 sent Martin a full body video from the bathroom on the Musical.ly app. Martin also had a Skype account under the name "Jazzy Martinez" and Martin convinced MV-3 to begin Skype video messaging. *Id.* Martin told MV-3 that he was a 15-year-old model for the LGBTQ community. Martin complimented MV-3 on her confidence and appearance.

In his communications with MV-3, Martin directed MV-3 to prove her confidence on camera. One of the tactics Martin used to get MV-3 to

produce explicit videos was to tell MV-3 that "Jazzy's" Skype account was hacked and the hackers had the video of MV-3 in the bathroom. PSR ¶ 15. Martin told MV-3 to make another video to "prove" herself. At some point, Martin learned that MV-3 had a younger sister. Martin instructed MV-3 to get her sister, who was 10 years old, and record her sister doing sexually explicit things to MV-3. *Id.* MV-3 initially refused, but Martin threatened to release the previous videos. Martin also instructed MV-3 to bring the family dog into a video chat. PSR ¶ 16. Martin told MV-3 to put peanut butter or water on her nude body for the dog to lick off. *Id.* MV-3 faked getting bit by the dog to end the video chat. Martin threatened to release the videos of MV-3 again and told MV-3 to "shake again and we can be done." MV-3 complied with Martin's demands.

On Martin's computer, law enforcement recovered two videos of MV-3 that Martin had saved. PSR ¶ 17. The first shows MV-3 nude. The second video was horrifying: at 36 minutes long, this video exemplifies Martin's depravity when viewed in context with a related Skype chat. In the video, MV-3 first undresses. *Id.* Then, MV-3 gets a dog. MV-3 attempts to get the dog to lick MV-3's chest and genitals. *Id.* In an

6

accompanying Skype chat between Martin and MV-3, Martin threatened MV-3 to get her to make more videos. Martin tried to force MV-3 to engage in sex acts with either her sister or the dog. *Id.* MV-3 pleaded with Martin, but her pleas fell on deaf ears. MV-3 begged Martin, stating: "I will do anything please…" "Help me," "Please, I thought you were my friend," "I need help," and "Please, I will do anything please, I'm begging you." *Id.* Martin did not relent, and demanded that MV-3 get peanut butter to try to entice the dog to engage in sex acts.

**Minor Victim 4**

In March 2018, the Illinois State Police interviewed the parent of a 12-year-old girl (MV-4) regarding online communications with an individual identified by the name "Jazmine," later identified as Martin. MV-4 was forensically interviewed, and law enforcement eventually located six videos of MV-4 in Martin's files.

MV-4 communicated with Martin via Skype for over a year. MV-4 said that Martin ordered her to get naked on Skype and to have the family dog lick her genitalia while on camera. Martin threatened to send the images and videos of MV-4 to her friends if Martin's demands were not met. Martin also demanded that MV-4 watch pornography.

Martin saved six videos of MV-4 on his computer. These videos reveal Martin's character. Martin coerced MV-4 and produced videos of her throughout 2016. PSR ¶ 19. Martin's abuse of MV-4 intensified over time. The videos of MV-4 begin with her being nude and showing her genitalia and bottom. *Id.* But in a later video, MV-4 attempted to have a dog lick her genitalia. In the same video, MV-4 can be seen masturbating and crying. *Id.* In an accompanying Skype chat, Martin threatened MV-4, stating: "If you don't call I will show yur [sic] bf that you were on with me and let yur [sic] dog lick your v and butt." *Id.* Also during the video, MV-4 urinated into a jar and then drank the contents. *Id.* But there is not just one video like this; instead, there are several videos where MV-4 is nude and a dog is licking MV-4's genitalia, and MV-4 urinates in a jar and then drinks it. In these videos, MV-4 is sobbing. *Id.*

**Minor Victim 5**

The forensic review of Martin's laptop revealed thousands of sexually explicit videos, including many made by Martin that involve child exploitation like that described above.

For example, in one series of videos, Martin used a different Skype account and communicated with a 13-year-old girl on Skype (MV-5). During the Skype chats between Martin and MV-5, Martin threatened the child numerous times. Martin told MV-5 "you care about your little sisters right," "it would be a shame if something terrible happened," "you gonna do what I say or should you officially start to worry," and "im coming for your family now. You better call 911." Martin used this child's fear to force her to create sexually explicit recordings both with herself and with her sister, as described below. Martin also threatened to show the video of this minor child and her sister to their grandmother stating "yeah i guess ill just have to show grandma the video I have of you and [MV-9]."

Four of the videos Martin saved on his computer are from 2016 and involve MV-5. In one video, which appears to be their first meeting, MV-5 started out happy and smiling but became distressed as the video goes on. During a Skype chat between Martin and MV-5, in the middle of the night, Martin told MV-5 to "shut off the site and video me on this now." MV-5 told Martin that she was 13 and hated Martin.

Another video showed MV-5 in distress and about to cry. Nonetheless, MV-5 took off her shirt and pants. A video produced the next day showed a distraught MV-5 covering her face with her hand and crying. In the video, MV-5 got her younger sister, and they both appeared nude and crying. MV-5's younger sister is clearly prepubescent.

In Skype texts, Martin instructed MV-5 on how to engage in sex acts with her little sister for Martin's own enjoyment. Martin told MV-5 to "guide [the sister's] hand" and "show [the sister] how it's done." Martin also demanded that MV-5 lick between her sister's butt cheeks.

Throughout the videos that Martin forced MV-5 to make and in the Skype chats between them, MV-5 pleaded with Martin to stop. MV-5 wrote:

- please leave my puppy and my family out of this PLEASE I am begging you.
- I have scared myself. [Sister] is having nightmares. and I went back to cutting.
- you wanna know what scares me the most... it that i knew somebody was watching me i fucking felt it in my bones and i pushed it away because everyone would think i an faking it or lying for attention. an also how i curled up onto the ground trying to not cry yesterday. i held my stomach.. i couldn't move.. it hurt like bloody hell. i was afraid that you would hurt me but then again. you gave me no proof you were even in my state.

In response, Martin only disparaged and degraded MV-5, stating:

- We both know you're useless and disgusting.
- You're a complete loser that has nothing going for her.
- Useless ragdoll. Your mom thought the same thing. She tossed you aside like an old dolly. Pathetic. You have no value. You do what I say then you're not a complete trash bag.

**Minor Victim 6**

Like MV-5, law enforcement discovered Martin's abuse of MV-6, a 14-year-old girl, by reviewing his devices. PSR ¶ 23. Martin enticed and produced videos of MV-6 in November and December 2017. There were five videos of MV-6 recovered, all with varying lengths between just over 20 minutes and up to one hour and 13 minutes, and most were created on a different internet application—Omegle. *Id.* Martin's videos of MV-6 show MV-6 stripping nude and, many times, crying. At many points in the videos, MV-6 showed her genitalia and in some videos MV-6 could be seen masturbating. *Id.*

Consistent with Martin's torturous methods, one video depicts MV-6 crying, then attempting to have a dog sniff her bottom and lick her genitalia. PSR ¶ 23. MV-6 also placed peanut butter on her body for the dog. During the video, MV-6 sobbed and said "i am done you told me

today was my last day and i did everything you told me to;" "you have

done way too much to me" and "i cant do it anymore." *Id.*

During their Skype chats, MV-6 stated to Martin:

- "You're telling me to do all this shit and its fucking weird"
- "Wait i have to do this again?"
- "I cant do this all the time because I'm only 14 and you're like way older than me, this isn't right"

PSR ¶ 24.

**Minor Victim 7**

Martin enticed, produced, and saved three videos of a 17-year-old

girl, MV-7. PSR ¶ 25. One video was made around September 6, 2014,

and is 24:31 in length. MV-7 cried during the video and stripped nude.

MV-7 showed numerous signs of distress throughout the video,

including crying, breathing heavily, rocking back and forth and hitting

herself. *Id.* MV-7 masturbated while sobbing. MV-7 begged Martin to

stop numerous times. Even though MV-7's voice is the only one that can

be heard, it is clear from the video that MV-7 was receiving orders. MV-

7 got an empty glass and urinated into it. *Id.*

Another video recovered from Martin depicts MV-7 nude in the

bathroom. *Id.* MV-7 then urinated into a mason jar, masturbated and

drank some of the urine, while coughing and begging "please." *Id.* MV-7

next brushed her teeth and then asked: "what do you mean, you said I only had to do a sip" and "I have to drink more?" *Id.* MV-7 cried and begged to be allowed to brush her teeth. MV-7 attempted to drink the urine again, but began to gag and spit. MV-7 then sobbed to the point where she got a nosebleed. MV-7 begged to be allowed to take a shower and clean up the blood and then begged to be allowed to leave. *Id.*

Martin's third video of MV-7 was created on or about December 31, 2016, and is over an hour in length. PSR ¶ 25. In this video, MV-7 is fully nude and masturbating. Agents were able to locate the Skype chats that correlate to the video. *Id.* In the chats, MV-7 pleaded with Martin to end the abuse. MV-7 told Martin:

- "im going to kill myself;"
- "you said you would let me go [sobbing];"
- "Can you just let me go and can you not share the videos and can you just leave me alone? What do you mean we'll see? What do you mean you're going to share the videos still? After all i did?"

PSR ¶ 26.

**Minor Victim 8**

Law enforcement recovered six videos of MV-8, an 11-year-old girl, from Martin's computer. PSR ¶ 27. The first video was produced around January 8, 2017, and is 29:24 long. In the video, a dog licked MV-8's

bare genitalia. In an accompanying Skype chat, Martin told MV-8 what do to, including: "yeahhh just like that girl let her keep licking" and "kk let her lick your butt from behind now." *Id.*

The remaining videos of MV-8 show MV-8 urinating into containers, showing her genitals and anus, and masturbating using markers or stuffed animals. *Id.*

**Martin's Receipt and Possession of Child Pornography**

The children identified above were not the only ones Martin victimized. A review of Martin's devices led to the discovery of thousands of sexually explicit videos, including many that Martin made using the same exploitive methods described above. PSR ¶ 28. Martin used various internet applications to coerce children and demand that they create child pornography for his sexual pleasure.

### B. Indictment and Plea

On December 8, 2020, a criminal complaint charged Martin with coercion and enticement of a minor, production of child pornography, receipt of child pornography, and possession of child pornography between September 2014 and February 2019. PSR ¶ 1. Martin made his

initial appearance on December 10, 2020, and was ordered detained on December 16, 2020. PSR ¶¶ 2-3.

On March 24, 2021, a grand jury returned a seventeen-count indictment charging Martin with seven counts of Production of Child Pornography (Counts 1, 2, 4, 6, 8, 10, 12, and 14), in violation of 18 U.S.C. § 2251(a), seven counts of Online Enticement of a Minor (Counts 3, 5, 7, 9, 11, 13, and 15), in violation of 18 U.S.C. § 2422(b), Receipt of Child Pornography (Count 16), in violation of 18 U.S.C. § 2252A(a)(2), and Possession of Child Pornography (Count 17), in violation of 18 U.S.C. § 2252A(a)(5). PSR ¶ 4.

On October 24, 2022, Martin pleaded guilty pursuant to a plea Rule 11 plea agreement to Counts 1 and 3 of the Indictment. PSR ¶ 6. The Rule 11 agreement provided that the remaining counts of the Indictment would be dismissed if the Court accepted the agreement and imposed a sentence consistent with its terms. While Martin pleaded guilty to Counts 1 and 3, he stipulated that he committed the offenses charged in Counts 2 and 4 through 17, and that his guidelines should be calculated accordingly. PSR ¶ 7. The United States agreed to

recommend that Martin's sentence of imprisonment not exceed the top of this guideline range as determined by the Court. *Id.*

## II.    Relevant 18 U.S.C. § 3553(a) Factors

Congress provided in 18 U.S.C. § 3553(a) the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

The most relevant factors to Martin's case are discussed below. An analysis of these factors dictates a sentence of life imprisonment for Martin.

### A.    The Sentencing Guidelines Range

The United States Probation Department calculated Martin's criminal history category to be I and total offense level to be 43 resulting in a sentencing guideline range of life imprisonment. PSR ¶ 148. Neither party objected to that calculation. The statutory minimum term of imprisonment for Count 1 is 15 years and the maximum is 30 years, and a minimum term of 10 years and maximum of life for Count 3. PSR ¶ 147. As discussed below, there is nothing mitigating about Martin that would warrant a variance or a downward departure from the guideline range.

While the United States is asking the Court to sentence Martin to a guideline sentence of life imprisonment, it should be noted that in the section of the presentence investigation report discussing factors that may warrant a departure from Martin's guidelines, the Probation Department only points the Court to U.S.S.G. § 5K2.8 – Extreme Conduct, which would support an *upward departure* from the guidelines. This provision states:

> If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a

> victim, gratuitous infliction of injury, or
> prolonging of pain or humiliation.

U.S.S.G. § 5K2.8 (2021).

## B.   Nature and circumstances of the offense and history and characteristics of Martin, 18 U.S.C. § 3553(a)(1)

Martin's offenses mandate a sentence that reflects the horrific, enduring nature of his crimes. Martin is among the most culpable of sex offenders; a fact that outweighs any positive personal characteristics. Martin sexually exploited multiple children over the course of many years. He used threats and manipulation to force his victims to create videos of the monstrous things he required of them, ensuring that the trauma suffered by each of his victims would endure. Martin both produced and possessed child pornography, amassing a collection of thousands of videos.

This is all to say nothing of the type of child pornography that excited Martin. Martin forced minor girls to engage in sex acts with their family dogs.  He degraded them to the point of self-harm. He demanded that they extend his abuse to their sisters. He forced them to drink their own urine. He did all of this to satisfy his own sexual desires.

The enduring mental, physical, and emotional trauma suffered by the young girls exploited by Martin is difficult to adequately describe. Martin's victims were incredibly young. For many, this abuse was their first sexual experience. Some of the victims will address the Court at sentencing, either through letters or in person. Part of what makes the nature and circumstances of Martin's offenses so terrible, and why his offense conduct warrants a guideline sentence of life imprisonment, is that his victims will have to relive their abuse every day for the rest of their lives. There is no escaping what Martin did to them; no real ability to be made whole again. They will continue to grow and become far more than what Martin did to them, but they will bear the emotional and mental scars of his terror forever.

Prior to his arrest, Martin had a stable job and residence. He grew up in a positive environment free from abuse or neglect and instead full of family support. PSR ¶¶ 132-34, 142-45. Martin does not suffer from any mental disease or substance abuse disorder. PSR ¶ 139. In other words, there are no mitigating factors about Martin for this Court to consider or reasons to vary from Martin's guideline range. The government acknowledges that a life sentence for a 33-year-old man is

an incredibly long sentence, and the government does not make this request lightly. But such a sentence is contemplated by the guidelines which balance numerous offense factors with Martin's criminal history. Martin has sentenced his young victims to live their entire lives knowing that they were exploited in unspeakable ways by him.

Accordingly, Martin's history and characteristics and the nature and circumstances of his offense weigh in favor of a sentence of life in prison in accordance with his guideline range.

### C.      Seriousness of the Offense, Adequate Deterrence, and Protecting the Public, 18 U.S.C. § 3553(a)(2)(B) and (C)

The abuse through threats and coercion of a child that is forever immortalized on video is one of the most serious offenses recognized under the law. Martin committed this most serious of offenses numerous times with multiple children. His sentence for this offense should reflect the seriousness of these crimes and the only effective way to do that is for this Court to impose a guideline sentence of life imprisonment.

Relatedly, the above considerations impact another § 3553(a) factor – the need to deter such conduct in the future. Sentencing in the federal system has long contemplated the ability to provide both specific and

general deterrence. *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008); *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006). A significant sentence is necessary so that Martin and others will understand the consequences of child exploitation and pornography offenses, and deter him and others from engaging in this conduct in the future.

Deterrence is particularly important when dealing with child pornography offenses because most child pornography crimes occur in private, making them easy to commit and very difficult to detect. This is particularly true in Martin's case where Martin used numerous internet applications, hid his identity, engaged in lengthy conversations with children, and got them to produce horrific videos for him, all while hiding behind his computer screen. Under such circumstances, deterrence is important to combat the normalization that occurs when offenders "may think that because they are on the Internet in their home that they are doing something that is innocent." *United States v. Kirchhof,* 505 F.3d 409, 415 (6th Cir. 2007).

Generally, child pornography crimes result in victims being repeatedly exploited, by a variety of different offenders, in perpetuity.

As Congress found, "child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-27 (1996).

Martin's unmitigated sexual interest in children and his sadistic proclivities make him a danger to the public. The acts he committed surely will continue to haunt his victims in the years to come. His predatory behavior seems to know no bounds, as Martin employed the same coercive and predatory tactics to manipulate children to engage in bestiality and other sexually explicit acts for his own heinous sexual gain. To be sure, law enforcement is only aware of a certain number of Martin's victims. However, common sense tells us that offenders like Martin often have far more victims than law enforcement knows about. Had Martin not been apprehended, there is no telling how many more children could have been victimized by him.

A guideline, custodial life sentence would reflect the seriousness of this offense, provide just punishment, and protect the public from Martin's future crimes.

### D.   Avoiding unwarranted sentencing disparities

A significant sentence is necessary to avoid unwarranted sentencing disparities. Martin's guideline range is life. Martin asks the Court to consider a downward departure sentence because he voluntarily ceased his conduct, was in a state of depression, and the impact of a lengthy sentence will be great to him and his family. These are not reasons for the Court to depart or vary from the guidelines. These reasons do not excuse Martin's years-long conduct that caused the victimization of many children. Nor do they overcome the factors already contemplated by the guidelines.

The Court must fashion a sentence that will avoid sentencing disparities with other similar defendants charged with similar crimes and the best way to accomplish this task is to sentence Martin to a guideline sentence of life imprisonment.

## III.   Conclusion

Colin Martin did horrible, unspeakable things to many children. His abuse was prolific and the effects will be enduring. There is nothing mitigating about Martin or his commission of this offense. Accordingly, the Court should impose the sentence contemplated by the guidelines

and because the factors set forth in § 3553(a) support such a sentence.

For this and the above-stated reasons, the United States asks the Court

to sentence Martin to life imprisonment.

Respectfully Submitted,

DAWN N. ISON
United States Attorney

*s/Tara Mathena Hindelang*
TARA MATHENA HINDELANG
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9543
tara.hindelang@usdoj.gov

Dated:  May 24, 2023

24

## Certificate of Service

I certify that on May 24, 2023, I electronically filed the foregoing document with the Clerk of the Court of the Eastern District of Michigan using the CM/ECF system, which will send notification to all counsel of record via email.

*s/Tara Mathena Hindelang*
TARA MATHENA HINDELANG
Assistant United States Attorney